1
2
3
4
5
6
7
8
9

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

10    MICHAEL FRANCIS DONOHOE,        )    No. C 06-2256 MJJ (PR)
                                      )
11              Petitioner,           )    **ORDER DENYING PETITION**
                                      )    **FOR WRIT OF HABEAS CORPUS**
12        v.                          )
                                      )
13    M.S. EVANS, Warden,             )    **(Docket Nos. 9 & 10)**
                                      )
14              Respondent.           )
      _____ )

15

16          Petitioner, a California prisoner proceeding pro se, filed the above-entitled petition for

17    a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The court ordered respondent to show

18    cause why the petition should not be granted based on petitioner's two cognizable claims for

19    relief.  Respondent has filed an answer and memorandum in support thereof, and petitioner

20    filed a traverse.

21                               **PROCEDURAL BACKGROUND**

22          In 2003, petitioner was convicted by a Napa County jury of inflicting corporal injury

23    on a spouse (Cal. Penal Code § 273.5(a)) and dissuading a victim or witness from testifying

24    (Cal. Penal Code § 136.1).  Petitioner was sentenced to nine years and four months in prison

25    after his eligible term was doubled under California's "Three Strikes" law.  Petitioner had

26    also been charged with battery with serious bodily injury (Cal. Penal Code § 243(d)), but the

27    jury found petitioner not guilty of this charge and instead convicted upon the lesser included

28

1

offense of misdemeanor battery (Cal. Penal Code § 243).  The jury also found not true an enhancement for great bodily injury connected to the spousal injury charge.

The California Court of Appeal affirmed the verdict but vacated the conviction for the misdemeanor battery charge as it is a necessarily included offense to inflicting corporal injury on a spouse.  The California Supreme Court denied the petition for review.

## FACTUAL BACKGROUND

The following facts are taken from the opinion of the Court of Appeal:

> Appellant's wife, Tammy Donohoe, was injured during a domestic fight in May 2003.  Appellant and Tammy were living apart at the time, and Tammy would not let appellant return home to live until he was "30 days clean and sober." On the morning of May 12, 2003, appellant telephoned Tammy and asked if he could come over to her house and discuss a couple things with her. During their three-month separation, the couple had several previous meetings and conversations, which Tammy described as not particularly pleasant. Tammy agreed that appellant could come to the house "as long as there was no arguing and fighting and he was clean."
>
> The couple had a "nice" meeting for 20 to 30 minutes, and then appellant told Tammy that he "had been clean a week" and wanted to return home. Tammy said he could not return until he had been sober for 30 days, and appellant grew angry. Appellant "started screaming" and calling Tammy a "bitch" and other obscenities. Appellant threatened to divorce Tammy and "take everything," including the couple's three-year-old daughter, Kelsey. Tammy was scared and asked appellant to leave. Appellant told Tammy he was taking her truck. Tammy told appellant that she needed the truck for transportation, but eventually relented and told appellant "take the truck and just go." Tammy thought appellant was leaving; she heard the truck start and reverse down the driveway.
>
> Tammy decided to call legal aid to find someone to help her, and sat down at the kitchen table with the telephone directory. Appellant drove back up to the house and came inside. Tammy told appellant to leave or she would call the police. Appellant said: "Fuck you, you're not calling anybody." Appellant made motions suggesting an intention to tear medical forms sitting on the table, but Tammy recovered them. Appellant then threw the truck keys, and they came within three inches of Tammy's face and struck the wall. The keys made a hole in the wall, and the remote entry control on the key ring shattered.
>
> Appellant walked behind Tammy, who was sitting at the table with the telephone directory, and demanded to know who she was calling. Tammy did not tell him, and appellant tried to grab the telephone directory away from her. From behind her, appellant grabbed Tammy's upper left arm with his left hand, and with his other hand reached over her shoulder for the telephone directory. Appellant's grip on Tammy's arm hurt her. Appellant, still holding on to Tammy's arm, lifted her out of the chair as he tried to rip the telephone directory from her hands. Appellant then "slammed" Tammy into the wall "pretty hard." Tammy's head and shoulder hit the wall, hurting her. Tammy tried to get loose from appellant's grip and told him to let her go, but appellant held on and "just kept screaming 'Give me the damn phone book. Give me the

2

damn phone book.' " Appellant had a "mean, angry-like a hateful, angry look" on his face during the couple's fight, and Tammy later testified that "he looked like he wanted to hurt me."

The evidence conflicts on what happened next. At trial, Tammy testified that, after appellant slammed her into the wall and continued to scuffle with her over the telephone directory, she tripped over a baby's high chair and fell to the ground, and appellant "fell on top of [her]." Tammy testified that appellant landed on her "like a domino effect." Appellant had been holding Tammy from behind and, when she fell down, "he came on top of [her]." According to the police, whose testimony is described more fully below, Tammy reported at the time of the incident that appellant did not fall on her, but jumped on her.

Whether appellant fell or jumped, he landed on Tammy's leg. Tammy's knee "snapped," and she felt "a white, hot pain." Tammy was in "excruciating" pain. Appellant stood up and asked Tammy if she was all right. Tammy said no, and appellant asked what he should do. Appellant asked if he should call 911 and picked up the telephone, but it was not working because it was knocked down and came unplugged when Tammy was "being thrown around" by appellant. Tammy told him: "Just leave." Appellant threw the telephone to the ground and said to Tammy: "There's nothing wrong with you. Get up you fat, fucking bitch. You're faking, get up. There's nothing wrong with you." Before leaving, appellant leaned over Tammy and said that she "better not fucking say anything to anybody or he'd make my life a living fucking hell." Appellant also said: "I know you will, you're a cop calling fucking bitch." As he walked away, appellant yelled at Tammy that "if I said anything that he'd take Kelsey from me and I'd never see her again." Tammy understood appellant's statements to be a threat that she should not call the police, and she was scared.

Tammy did not call the police. Tammy telephoned a neighbor, and agreed that the neighbor could call 911 because she needed medical attention. Tammy testified that she suffered torn ligaments and tendons in her knee, and will likely need surgery. Tammy was wearing a leg brace and still in pain at the time of trial, almost three months after being injured. Tammy also suffered bruises on her arms and a "knot" on her head from being picked up, swung around, and slammed into a wall.

Police testimony disputed Tammy's testimony that her knee was injured when appellant fell on her. A police officer testified that Tammy told him that appellant "threw her across the room," where she hit a child's high chair and then appellant "*jumped* on top of her." (Italics added.) Appellant's mother testified at trial, and said that she was present when Tammy spoke to the police. Appellant's mother testified that Tammy told the police that Tammy's knee was injured when appellant accidentally "fell" on top of Tammy. Appellant's mother was "astonished" that her son was being prosecuted for a crime. The police officer denied that Tammy ever said that her injury was "accidental." Tammy's trial testimony did not characterize the incident as an accident, but she did say that she did not believe she ever told the officer that appellant jumped on her, rather than falling on her.

Tammy's trial testimony about how she received the injury to her knee was largely consistent with her conversation with a 911 dispatch operator. The operator telephoned Tammy after receiving the neighbor's report that Tammy was injured. Tammy did not say that she tripped and fell over a high chair, as she did at trial, but rather told the operator that appellant "threw me to the ground." However, Tammy did tell the operator, as she later testified at trial, that appellant "then fell on top of me."

3

1   People v. Donohoe, No. A104569, Slip Op. at 2-5 (Cal. Ct. App. January 27, 2005)

2   (hereinafter "Slip Op.").

3                                **DISCUSSION**

4   **A.      Standard of Review**

5           Petitioner's habeas corpus petition is governed by the Antiterrorism and Effective

6   Death Penalty Act of 1996 (AEDPA), whereby a district court may grant relief on the basis

7   of a claim that was reviewed on the merits in state court only if the state court's adjudication:

8   "(1)  resulted in a decision that was contrary to, or involved an unreasonable application of,

9   clearly established Federal law, as determined by the Supreme Court of the United States; or

10  (2) resulted in a decision that was based on an unreasonable determination of the facts in

11  light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

12          Under the 'contrary to' clause of 28 U.S.C. § 2254(d)(1), a federal court may grant a

13  writ if the state court's conclusion is "opposite to that reached by this Court on a question of

14  law or if the state court decides a case differently than this Court has on a set of materially

15  indistinguishable facts."  Williams (Terry) v. Taylor, 529 U.S. 362, 413 (2000).   An

16  'unreasonable application' occurs when the state court identifies "the correct governing legal

17  principle" from the appropriate Supreme Court decision but "unreasonably applies that

18  principle to the facts of the prisoner's case."  Id. at 412-13.  The federal court on habeas

19  review may not issue the writ "simply because that court concludes in its independent

20  judgment that the relevant state-court decision applied clearly established federal law

21  erroneously or incorrectly."  Id. at 411.  Rather, the application must be "objectively

22  unreasonable" to support granting the writ.  Id. at 409.

23          In any event, habeas relief is warranted only if the constitutional error at issue is

24  structural error or had a "'substantial and injurious effect or influence in determining the

25  jury's verdict.'"  Penry v. Johnson, 532 U.S. 782, 795-6 (2001) (quoting Brecht v.

26  Abrahamson, 507 U.S. 619, 638 (1993)).  When highest state court to rule on petitioner's

27  claims provides no reasoned opinion, the court looks to the last court to issue a reasoned

28

                                        4

opinion, which in this instance is the Court of Appeal.  Ylst v. Nunnemaker, 501 U.S. 797, 801-6 (1991).

**B.**     **Petitioner's Claims**

Petitioner makes two claims pertaining to the jury instruction on the accident defense pursuant to CALJIC No. 4.55.  First, petitioner claims an error in the instruction was structural, requiring his conviction and sentence be vacated without regard to whether the error was harmless.  Second, petitioner argues that even if the erroneous instruction was trial error, the state court unreasonably found the error to be harmless.

The Court of Appeal found the jury instruction regarding the accident defense to be erroneous, as follows:

> At [petitioner's] request, the court instructed the jury on the defense of accident: "When a person commits an act or makes an omission through misfortune or by accident under circumstances that show neither criminal intent or purpose, *nor criminal negligence* he does not thereby commit a crime." (CALJIC No. 4.45, italics added.) The court also defined "criminal negligence" for the jury, with defense counsel's concurrence. (CALJIC No. 3.36.)
> The court's error was to include the reference to criminal negligence (italicized above). As [petitioner] notes on appeal, and the People concede, the crime of inflicting corporal injury is not committed by criminal negligence alone but requires general intent. (*People v. Thurston* (1999) 71 Cal.App.4th 1050, 1054-1055; *People v. Lara* (1996) 44 Cal.App.4th 102, 107-108.) The Use Note for the form instruction on the defense of accident itself specifies: "If the crime charged can only be committed with  general or specific intent, do not instruct on criminal negligence." (Use Note to CALJIC No. 4.45.)

(Slip Op. at 6.)  Respondent does not dispute that the instruction was erroneous in this regard, and the conclusion of the California Court of Appeal on this point of California law is, in any event, binding on this Court.  See Hicks v. Feiock, 485 U.S. 624, 629 (1988).  Respondent also does not dispute that the instructional error not only violated California law, but also violated his right to due process.  Thus, the Court assumes for the purposes of this discussion that a due process violation occurred.  See generally Carella v. California, 491 U.S. 263, 265 (1989).  The Court thus turns to the issues raised in petitioner's claims, namely whether the error was structural or trial error, and if the latter, whether the error was harmless.

**1.**     **Structural Error**

Petitioner first claims that the erroneous jury instruction amounted to structural error

1  because it allowed the jury to convict him based upon an impermissible criminal negligence

2  theory of guilt.

3       There are two broad types of constitutional errors that may occur during the course of

4  a criminal proceeding: trial error and structural error.  See Hardnett v. Marshall, 25 F.3d 875,

5  879 (9th Cir. 1994).  Structural error is a "defect affecting the framework within which the

6  trial proceeds, rather than simply an error in the trial process itself."  Arizona v. Fulminante,

7  499 U.S. 279, 310 (1991).  Structural error requires reversal unless the reviewing court has

8  "absolute certainty" that the error did not produce defendant's conviction.  See Lara v. Ryan,

9  455 F.3d 1080, 1086 (9th Cir. 2006).   Trial error, on the other hand, is error "which occurred

10  during the presentation of the case to the jury, and which may therefore be quantitatively

11  assessed in the context of other evidence presented in order to determine whether its

12  admission was harmless."  Fulminante, 499 U.S. at 307-08.

13       Generally speaking, an erroneous jury instruction is considered trial error and is

14  appropriately subject to a "harmless error" analysis.  See Neder v. United States, 527 U.S. 1,

15  8-11 (1999).  Such is the case when an instruction omits or incorrectly describes an element

16  of an offense.  See California v. Roy, 519 U.S. 2, 5 (1996) (omission of "intent" element

17  from aiding and abetting instruction subject to harmless error analysis where jury could have

18  found intent based on evidence it considered); accord Evanchyk v. Stewart, 340 F.3d 933,

19  940-41 (9th Cir. 2003) (violation of due process based on jury instructions that omitted

20  "intent" element of first-degree felony murder subject to harmless error analysis).  There is

21  one particular circumstance in which jury instructions have been found to cause structural

22  error, however namely "when a case is submitted to the jury on alternative theories the

23  unconstitutionality of any of the theories requires that the conviction be set aside."

24  Sandstrom v. Montana, 442 U.S. 510, 526 (1979); see also Lara, 455 F.3d at 1083-86

25  (finding structural error where attempted murder instructions allowed alternate theories of

26  guilt based on express or implied malice, and the implied malice theory was unconstitutional

27  because it did not require specific intent, an element of attempted murder).

28

1    The Court of Appeal concluded that the error was not structural error and was

2 therefore subject to a harmless error analysis, based on the following reasoning:

3           [Structural error is] inapplicable here, where the misinstruction related
      to a defense introduced by appellant, not a prosecution theory of the case. At
4     most, the court's error constituted misinstruction on an element of the offense,
      i.e. intent, and such errors are reviewed under a harmless error test. (*Neder v.*
5     *United States, supra*, 527 U.S. at ¶. 8-15*; People v. Harris*, *supra*, at ¶.
      424-425.) The relevant question on appeal is whether "it appears 'beyond a
6     reasonable doubt that the error complained of did not contribute to the verdict
      obtained.' " (*People v. Harris, supra*, at p. 424, citing *Chapman v. California*
7     (1967) 386 U.S. 18, 24, 17 L. Ed. 2d 705.)

8 (Slip Op. at 7-8.)

9    The Court of Appeal's conclusion that the instructional error was not structural was a

10 "reasonable application" of United States Supreme Court precedent within the meaning of §

11 2254(d)(1). As described above, the Supreme Court has found structural error from a jury

12 instruction when the instruction allows alternate theories of guilt, one of which is infirm.

13 Here, the erroneous instruction, as the Court of Appeal correctly indicated, pertained to a

14 defense theory, not a theory of guilt. While the accident instruction in this case misinformed

15 the jury that the defense did not apply if there was criminal negligence, neither that

16 instruction nor any other instruction in the record allowed the jury to convict petitioner of the

17 charges based on criminal negligence. Indeed, there is no dispute that the other instructions

18 correctly informed the jury as to the proper elements of the charge of inflicting corporal

19 injury on the spouse, specifically that it is a general intent crime requiring intent or purpose.[1]

20 To whatever extent the erroneous instruction might further be read to have misinformed the

21 jury as to an element of the offense, and not simply as to the accident defense, the Court of

22 Appeal correctly concluded that such an error is not structural but is reviewed for

23 harmlessness. See Ho v. Carey, 332 F.3d 587, 595 (9th Cir. 2003) (due process violation

24

25

26          [1]The jury was instructed under CALJIC No. 9.35 that a person is not guilty of
inflicting corporal injury on a spouse unless the "person willfully inflicted bodily injury upon
27 his spouse." The court also gave a general criminal intent instruction to the jury, CALJIC
No. 3.30, which provides that "there must exist a union or joint operation of act or conduct
28 and general criminal intent."

based on erroneous instruction that second degree murder is a general intent crime is subject to harmless error analysis);  see also Lara, 455 F.3d at 1086 ("omissions or incorrect descriptions of elements are considered trial errors, not structural errors").

Petitioner points to no precedent, let alone any United States Supreme Court precedent, as required by § 2254(d)(1), indicating that an erroneous instruction on a defense amounts to structural error, or that such error is equivalent to an instruction allowing alternate theories of guilt, one of which is infirm.  In the absence of any indication in the record that the jury was instructed on two alternate theories of guilt, one of which is infirm, there is no basis for finding the instructional error in this case to be structural.  Consequently, the Court reviews the error for harmlessness.

**2.      Harmless Error**

Petitioner's second claim is that the error in the instruction on the accident defense was not harmless.  Where, as here, the state court disposed of a constitutional error as harmless under  Chapman v. California, 386 U.S. 18, 24 (1967), a federal court must, for purposes of application of the "unreasonable application" clause of § 2254(d)(1), first determine whether the state court's harmless error analysis was objectively unreasonable.  See Medina v. Hornung, 386 F.3d 872, 878 (9th Cir. 2004).

The Court of Appeal found the erroneous jury instruction regarding the accident defense because the defense was not raised with respect to the charge of which petitioner was convicted.  (Slip Op. at 8-9.)  The accident defense was raised as to the portion of the incident in which petitioner injured Tammy's knee – the prosecution argued petitioner jumped on Tammy's knee, and petitioner argued that he accidentally fell on it.  (Id.)  The injury to knee was the basis of the serious bodily injury charges against petitioner, and the jury acquitted petitioner of those charges.  (Id.)  The accident defense was not raised with respect to the earlier portion of the incident, in which petitioner lifted Tammy out of the chair, slammed her against the wall, and injured her head and shoulder.  (Id.)  Those actions were the basis of the charge of inflicting injury upon a spouse, the charge of which petitioner

1   was convicted.  (Id.)  As explained by the California Court of Appeal:

2           The instructional error was harmless beyond a reasonable doubt. While
        there was conflicting evidence on whether Tammy's knee injury was the result
3       of appellant intentionally jumping on her, or negligently falling on her, the
        evidence was clear and uncontradicted that appellant intentionally lifted
4       Tammy up out of the chair in which she was sitting and slammed her into a
        wall, hurting her head and shoulder.

5   (Id.)

6           In light of the record, the Court of Appeal reasonably found the instructional error to

7   be harmless.  In his closing argument the prosecutor restricted his argument about the lack of

8   accident and petitioner's negligence to the serious bodily injury charges and the injury to

9   Tammy's knee: "I want to talk about why this isn't a big accident....this only goes to the

10  great bodily injury in the serious bodily injury counts because it goes to the knee." (RT at

11  255).  Notwithstanding the error in the accident instruction that the accident defense did not

12  apply if there was criminal negligence, the jury nonetheless acquitted petitioner of the serious

13  bodily injury charges.  With respect to the charge of which petitioner was convicted, the

14  prosecutor argued that petitioner was guilty of inflicting injury on his spouse based on his

15  picking Tammy up out of her chair and slamming her against the wall.  The prosecutor did

16  not argue these actions were performed negligently, but rather "willfully":

17          And this alone is enough to prove Count One [inflicting corporal injury
        on a spouse].  He willfully picked her up, used physical force, he threw her into
18      the wall and it resulted in traumatic condition which is defined as any injury, if
        you want, bruising that lasts form one week to two weeks.  But when he did
19      that, when he picked her up and he slammed her into the wall, that was Count
        One.  At minimum."
20

21  (RT at 239.)  There was no argument by defense counsel, or assertion by petitioner, that he

22  had picked Tammy up out of the chair and slammed her against the wall by accident.  Thus,

23  the record indicates the accident defense did not apply to the portion of the incident

24  underlying petitioner's conviction.  As the accident defense in this case was limited to the

25  knee injury, which was the basis for the charges of which petitioner was acquitted, the error

26  in the accident instruction was harmless.

27          Moreover, the record indicates that the jury found intent with respect to the spousal

28

injury charge.  A jury is presumed to followed the jury instructions, including the instruction in this case that inflicting injury on a spouse is a general intent crime requiring intent.  See Richardson v. Marsh, 481 U.S. 200, 211 (1987).  If the instruction on the accident defense had been proper, it would have informed the jury that the defense only applied in the absence of intent and purpose, and would not have mentioned negligence.  As the record indicates the jury found petitioner injured his spouse intentionally, they would not have properly applied the accident defense to the charges even if the accident instruction had been proper.  Consequently, the error in the accident instruction was harmless as to petitioner's conviction on the spousal injury charge.

In light of the foregoing, the Court of Appeal's decision that the erroneous jury instruction was harmless beyond a reasonable doubt was not an "unreasonable application" of federal law within the meaning of § 2254(d)(1).  Accordingly, habeas relief is not warranted on this claim.

## CONCLUSION

In light of the foregoing, the petition for a writ of habeas corpus is DENIED.

The Clerk shall close the file and terminate any pending motions, including Docket Nos. 9 & 10.

IT IS SO ORDERED.

DATED: 9/11/07

_____
MARTIN J. JENKINS
United States District Judge